UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**COURTNEY SENEGAL**                    :        **DOCKET NO. 2:16-cv-1756**

**VERSUS**                              :        **UNASSIGNED DISTRICT JUDGE**

**SHERIFFS DEP'T BEAUREGARD
PARISH, ET AL.**                        :        **MAGISTRATE JUDGE KAY**

### REPORT AND RECOMMENDATION

Before the court are Motions for Summary Judgment [docs. 43, 58] filed by defendant Joshua Stanford ("Stanford") in the civil rights and tort action brought by Courtney Senegal ("Senegal"/"plaintiff"), individually and as administrator on behalf of the estate of Eric Senegal ("decedent"). Senegal has filed no opposition to either motion and her time for doing so has passed. Accordingly, the motions are regarded as unopposed. They have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

### I.
#### BACKGROUND

This action arises from the decedent's death during the execution of a no-knock search warrant at the decedent's home in Ragley, Louisiana, allegedly committed by members of the Beauregard Parish Narcotics Task Force ("NTF") and Beauregard Parish SWAT Team on the night of January 4, 2016. Doc. 49, pp. 4–10. The warrant was allegedly obtained by members of the NTF based on uncorroborated and unreliable sources and without a risk assessment performed by any member of the NTF to determine the need for applying for a "no-knock" warrant. *Id.* at 5–6. The plaintiff asserts that defendants are therefore liable for forcibly entering the decedent's home on

the night of January 4, 2016 and firing numerous shots which fatally wounded the decedent and his dog. *Id.* at 6–7.

The plaintiff, who is the surviving spouse of the decedent, filed suit in this court against several defendants, including DeRidder Police Officer Joshua Stanford. *See* doc. 1. In her second amended complaint, she seeks to hold Stanford personally liable under 42 U.S.C. § 1983 and state tort law based on Stanford's alleged presence during the execution of the warrant and involvement in the NTF, which plaintiff maintains had a policy of requesting "no-knock" warrants without making necessary constitutional inquiry.[1] Doc. 49, pp. 4–16.

Stanford moved for summary judgment [doc. 43] after the plaintiff filed her first amended complaint, and now renews the arguments made in that motion based on the claims raised in the plaintiff's second amended complaint. Doc. 58. The plaintiff has filed no response, and so the motions are regarded as unopposed.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

---

[1] Senegal alleges that Stanford, along with others, failed to provide appropriate assistance to the decedent, failed to preserve the crime scene, and obstructed the criminal investigation. Doc. 49, pp. 9–10. However, she does not raise any claims based on these allegations. *See id.* at 11–15.

-2-

*Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

"A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995) (quoting *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). The moving party still bears the burden, described above, of demonstrating the absence of a genuine issue of material fact. *Id.* Under this court's rules, however, when the non-moving party fails to file a response and statement of contested material facts, the court deems the moving party's statement of uncontested material facts as admitted for the purpose of the summary judgment motion. Local Rule 56.2.

### III.
#### APPLICATION

Senegal asserts that Stanford is liable to her under § 1983 based on Fourth and Fourteenth Amendment violations incurred through the procurement and execution of a no-knock warrant. Doc. 59, pp. 11–15. She also raises claims under state tort law. *Id.*

Stanford maintains that he is entitled to dismissal of all claims. Doc. 58. He points to uncontroverted evidence that he was not involved in the procurement of the warrant and that he was not on the entry team when that warrant was executed, and asserts that the plaintiff's claims do not meet the limited circumstances for applying bystander liability under § 1983.[2] Doc. 43, pp. 4–5. In the alternative he asserts that he is entitled to qualified immunity or warrant immunity for any wrongdoing. *Id.*

## A. *§ 1983 claims*

Federal law provides a cause of action against any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, in order to hold the defendants liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law; that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988).

A plaintiff may use § 1983 in order to raise a claim that authorities used excessive force under the Fourth Amendment in executing a search warrant. *See, e.g.*, *Mason v. Lowndes Cty. Sheriff's Dep't*, 106 Fed. App'x 203, 208 (5th Cir. 2004); *Bailey v. Lawson*, 614 Fed. App'x 752, 753–55 (5th Cir. 2015). A plaintiff can prevail on such a claim if he shows that, from the perspective of a reasonable officer at the scene, the amount of force used to execute the search "was 'grossly disproportionate to the need.'" *Mason*, 106 Fed. App'x at 208 (quoting *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998)) (cleaned up).

Here, however, we need not explore the reasonableness of the force used. Stanford's uncontested facts establish that (1) he was not involved in procuring the search warrant, (2) he was

---

[2] He also maintains that he did not breach any duty under the medical care claim. Doc. 43, att. 1, pp. 16–17. As stated supra, however, we do not find that Senegal has raised any claim based on the medical care (or lack thereof) that the decedent received.

-4-

not on the entry team that made the initial entry into the Senegal home to execute the search warrant, and (3) he did not fire a shot on the night of January 4, 2016. Doc. 60; *see* doc. 43, atts. 2–4. Because the plaintiff filed no opposition to the motions for summary judgment, these facts are deemed admitted. Accordingly, Stanford can only be held liable under a theory of bystander liability. Under this theory, Stanford is liable if he was present at the scene and failed to take reasonable measures to protect to the decedent from another officer's use of excessive force. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 2013); *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013). Such a claim is viable where the plaintiff can show that the bystander officer "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale*, 45 F.3d at 919.

In her second amended complaint Senegal alleges that members of the NTF, including Stanford, had a policy of exclusively requesting no-knock search warrants "without making necessary constitutional inquiry." Doc. 49, p. 4. She also alleges that Deputy Berry Thompson presented an application for search warrant of Senegal's home on January 4, 2016, based on (1) information received from a confidential informant about the decedent selling marijuana and (2) a tip from a concerned citizen who contacted the Beauregard Parish Sheriff's Office that date and alleged that when he visited the decedent's home to confront him about selling drugs, the decedent pulled a sawed-off shotgun on him. *Id.* at 5. Senegal alleges that Thompson unreasonably relied on the confidential informant and the tip from the "concerned citizen," and that no risk assessment of the scene "was performed by any member of the NTF including, but not limited to . . . Stanford prior to applying for or obtaining the 'no knock' warrant." *Id.* at 5–6. She also alleges that Stanford was present when the search was executed, and that during that time "officers forcibly entered the home . . . and fired numerous shots striking and fatally wounding both Eric Senegal and his dog." *Id.* at 6–7. However, she alleges nothing to show that Stanford was aware of deficiencies in the

affidavit which would make the issuance of a no-knock warrant unacceptable. She generally asserts that Stanford and several other officers, some of whom were allegedly in plain clothes, "activated flash bangs, made forcible entry with their weapons drawn and immediately began firing shots into the home." *Id.* at 9. But in the next paragraph she only alleges that Deputies Dale Sharp, Oscar Lopez, and Freddie Doyle "intentionally fired lethal and fatal shots." *Id.* Meanwhile, Stanford's evidence, deemed admitted as described above, establishes that he was **not** part of the entry team and did not discharge his weapon.[3]

The above facts demonstrate that there is no circumstance under which Stanford might have had "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." Stanford's lack of involvement in the warrant application shows that there is no basis on which he should have reasonably realized the hidden affidavit deficiencies alleged and that the no-knock entry was thus unjustified in this matter. His absence from the entry team means that he reasonably had no opportunity to ascertain whether the continued use of force was necessary once SWAT Team members entered the Senegal residence, much less any reasonable opportunity to intervene and stop the use of force. Accordingly, Stanford has carried his burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on the § 1983 claims.

### B. State law claims

#### 1. Intentional torts

As stated above, Senegal also seeks to hold Stanford liable under state law based on claims of assault and battery. Assault and battery are intentional torts. Louisiana jurisprudence defines

---

[3] Stanford provides deposition testimony from one witness stating that he had no part in planning the entry into the Senegal residence and that he did not see Senegal do anything at the scene other than administer CPR to the decedent after he was shot, and from another who also avers that Stanford did not try to gain entry into the house and did not fire a shot that night. *See* doc. 43, att. 2, pp. 7–8; doc. 43, att. 4, pp. 11–12.

battery as a harmful or offensive contact with a person, and assault as a threat of such contact. *Brown v. Diversified Hospitality Grp., Inc.*, 600 So.2d 902, 906 (La. Ct. App. 4th Cir. 1992). "The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent." *Caudle v. Betts*, 512 So.2d 389, 391 (5th Cir. 1987).

Under Louisiana law, an employer may be vicariously liable for torts, including intentional wrongs, committed by his employee. La. Civ. Code art. 2320; *see, e.g.*, *Payne v. Tonti Realty Corp.*, 888 So.2d 1090, 1094–95 (La. Ct. App. 2d Cir. 2004). But Senegal does not allege that Stanford was the employer of any individual who allegedly committed an assault or battery in this matter, or that there is any other basis for holding him vicariously liable for the actions of other defendants. Given Stanford's lack of personal involvement in these alleged torts, then, he is entitled to summary judgment.

### 2. *Negligence*

Senegal also alleges that Stanford, along with others, performed various NTF tasks negligently and that the negligence was a substantial factor in the decedent's death. Doc. 49, pp. 10–11, 13. However, Senegal seeks to hold the City of DeRidder, as Stanford's employer, liable for this alleged negligence under a theory of negligent hiring/supervision and under the doctrine of *respondeat superior*. *Id.* at 13–15. There is no indication that she also seeks to hold Stanford individually liable for negligence under state tort law. Out of an abundance of caution, however, we address these claims.

The doctrine of qualified immunity shields officials from civil liability "so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). The issue of qualified immunity also alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

In such cases the burden shifts to the plaintiff to rebut the defense, though facts are still viewed in a light most favorable to him and all inferences are still drawn in his favor. *Id.*; *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009). The plaintiff may use the existence of a genuine issue of material fact to carry his burden. *E.g.*, *Clark v. Massengill*, 641 Fed. App'x 418, 419–21 (5th Cir. 2016).

Qualified immunity claims are analyzed through a two-step sequence, in which the court determines (1) whether plaintiff can "make out a violation of a constitutional right" and then (2) "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."[4] *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Pearson v. Callahan*, 129 S.Ct. 808, 815–16 (2009)). Qualified immunity thus remains a high bar, protecting "all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986)).

In this matter, we have already established that Stanford's alleged conduct on the excessive force/execution of the search warrant claims could not amount to a constitutional violation. To the extent that Senegal would raise her allegation of failure to provide adequate medical care as an instance of negligence, she has likewise failed to allege that it amounted to a constitutional violation.[5] Accordingly, Stanford is shielded by the doctrine of qualified immunity from any negligence claims under state law. He is therefore entitled to summary judgment on any such claims brought against him in an individual capacity.

---

[4] "Courts are permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case," though the Court advises that deciding the two prongs in order "is often beneficial." *Id.* (quoting *Pearson*, 129 S.Ct. at 236)

[5] In order to prevail on a claim of constitutionally inadequate medical care, an arrestee must show that officers displayed deliberate indifference to a serious risk of bodily harm, a standard greater than "[m]ere negligence, or even gross negligence." *Gilbert v. French*, 665 F.Supp.2d 743, 760 (S.D. Tex. 2009)

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the second Motion for Summary Judgment [doc. 58] be **GRANTED** and that all claims against defendant Joshua Stanford be **DISMISSED WITH PREJUDICE**. It is further **RECOMMENDED** that the first Motion for Summary Judgment [doc. 43] be **DENIED AS MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 8th day of May, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE