UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **COURTNEY SENEGAL ET AL** | **CASE NO. 2:16-CV-01756** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SHERIFFS DEPT BEAUREGARD PARISH ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)" (Doc. 127) filed by Defendants former Beauregard Parish Sheriff Ricky Moses, Berry Thompson, Saul Wilson, Oscar Lopez, Dale Sharp, Freddie Doyle, Greg Crain, Brian Leedom, Brad Hampton, William Martin, Nick Morris, and Robert Moreland (collectively referred to as "Defendants"). Defendants maintain that Plaintiffs have not sufficiently pled either an official capacity claim or an individual capacity claims which arises under 42 U.S.C. § 1983 against former Sheriff Ricky Moses and seek to have such claims dismissed with prejudice with Plaintiff to bear all costs.

## INTRODUCTION

Plaintiff Courtney Senegal is the administrator for the Estate of Eric Senegal. The following allegations are made in Plaintiff's Second Amended Complaint;[1] this motion relates solely to the allegations made therein.[2]

---

[1] Doc. 49.
[2] See Defendants' Motion, p. 1. Doc. 127-1.

On or about January 4, 2016, Mr. Senegal was at his home in Ragley, Louisiana. On that same date, the Beauregard Parish Narcotics Task Force ("NTF") was called to investigate allegations of criminal activity at Mr. Senegal's home.[3] The NTF was an interagency operation funded by a federal grant and included members of the Beauregard Parish Sheriff's Office and the DeRidder Police Department, namely Deputies Berry Thompson, Saul Wilson, and Joshua Stanford.[4]

On or about January 4, 2016, Deputy Berry Thompson presented an Application for Sworn Proof of Probable Cause for the Issuance of a Search Warrant (the "Application") to Judge Martha Oneal for execution and issuance of a "no knock" search warrant on Mr. Senegal's home.[5] The Application averred that Deputy Thompson received "reliable" information from a confidential informant ("CI") that Mr. Senegal sold the CI marijuana on December 30, 2015; in addition, a "concerned citizen" contacted the Beauregard Parish Sheriff's Office on January 4, 2016, and stated that he/she had visited Mr. Senegal's home to confront him about drugs and that Mr. Senegal pulled a sawed off shotgun on him.[6]

The Application did not inform Judge Oneal that Deputy Thompson was unable to corroborate the information provided by the CI and that an attempt by the CI and Deputy Thompson had set up a controlled buy which failed.[7] The Application failed to include that

---

[3] Second Amended Complaint, Doc. 49, ¶ 4.
[4] Id.
[5] Id. ¶ 6.
[6] Id. ¶ 7.
[7] Id. ¶ 8.

the information provided by the "concerned citizen" was received from an anonymous caller whose identity and contact information was unknown.[8]

In addition, no risk assessment was performed by any member of the NTF prior to applying for or obtaining the "no knock" warrant. Plaintiff alleges that Deputy Thompson obtained the warrant by means of fraud, misrepresentation, and mischaracterization which was calculated to mislead the signing judge.[9]

On the night of January 4, 2016, the NTF and the Beauregard Parish SWAT Team[10] executed the warrant and forcibly entered the Mr. Senegal's home firing numerous shots which struck and fatally wounded Mr. Senegal.[11] Plaintiff alleges that the search warrant was issued without probable cause.[12]

The Beauregard Parish Sheriff's Office and Sheriff Ricky Moses have an official policy in place related to drafting and review of affidavits and search warrants, body cameras, execution of search warrants, and SWAT team procedures. Plaintiff alleges that had these procedures been followed, the fatal shooting would not have occurred.[13]

Sheriff Ricky Moses either hired, or maintained in his employ, Defendant Thompson, Wilson, Lopez, Sharp, Doyle, Crain, Leedom, Hampton, Martin, Morris, Moreland, and Stanford. Plaintiff alleges that the hiring, entrustment and lack of training are the direct and proximate cause of Mr. Senegal's death.

---

[8] Id. ¶ 9.
[9] Id. ¶ 10.
[10] The following deputies were involved, some of which were not dressed to identify their law enforcement capacity: Robert Moreland, Dale Sharp, Oscar Lopez, Freddie Doyle, Greg Crain, Brian Leedom, Brad Hampton, William Martin, Nick Morris and Officer Josh Stanford.
[11] Id. ¶ 12.
[12] Id.
[13] Id.

## **RULE 12(C) STANDARD**

A Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) Motion to Dismiss. See *Bennett-Nelson v. Louisiana Bd. Of Regents,* 431 F.3d 448, 450 n. 2 (5th Cir. 2005). Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present a defense of failure to state a claim upon which relief can be granted and authorizes a court to dismiss a case pursuant to a motion by the defendant when a plaintiff has not stated a cause of action. *Ceason v. Holt,* 73 F.3d 600 (5th Cir. 1996). "A claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which will entitle him to relief." *U.S. ex. Rel. Willard v. Humana Health Plan of Texas, Inc.,* 33 F.3d 375, 379 (5th Cir. 2003).

The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but

challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

In this Motion, Sheriff Moses moves to be dismissed in both his individual and official capacity because the alleged facts and the applicable law show that there is no valid claim against him in either capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). The Fifth Circuit has explained as follows:

> In order to hold a municipality or local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was the cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege the custom or policy served as a moving force behind the constitutional violation at issue, or the [her] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City Police Dept.,* 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets and citations omitted).

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Tex.,* 981 F.2d 237, 245 (5th Cir. 1993). A plaintiff must identify the policy or custom which allegedly caused the deprivation of constitutional rights. See, e.g., *Murray v. Town of Mansura,* 76 Fed.App'x 547, 449 (5th Cir. 2003), citing *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F. 3d 478, 483 n. 10 (5th Cir. 2000); *Treece v. Louisiana,* 74 Fed. App'x 315, 316 (5th Cir. 2003) citing *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).

An "official policy" may be either a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or a persistent widespread practice … which, although not authorized by an officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a municipal policy. *Webster v. City of Houston,* 735 F.2d 838, 842 (citing *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984)). "Isolated acts" generally cannot establish the existence of a custom or practice. *Burge,* 336 F.3d at 370. A custom is tantamount official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy. *Webster,* F.2d at 841. Prior incident "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice…" *Id.* at 842.

As noted by Defendants, Plaintiff has not identified any policy, practice or custom which served to violate Decedent's rights. Plaintiff argues that she has alleged that sheriff Moses failed to adequately train his deputies to follow the appropriate steps in procuring and executing no knock warrants.

The Court has reviewed the Second Amended Complaint and finds that there are no allegations that Sheriff Moses was personally involved in the incident giving rise to this action.  Therefore, the individual claims against him will be dismissed.

With regard to alleging municipal liability under 42 U.S.C. § 1983, "[A] plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3)

was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City,* 879 F.3d 613, 621 (5th Cir. 2018).

The first policy prong "includes the decision of a government's law makers, the acts of its policymaking officials, and practices so persistent and widespread to practically have the force of law." *Pena,* 879 F.3d at 621-22, citing *Connick v. Thompson,* 563 U.S. 51, 61 131 S.Ct. 1350 (2011) (citations omitted); *Peterson v. City of Fort Worth,* 588 F.3d 838, 850-51 (5th Cir. 2009). Moreover, the description of a policy or custom and its relationship to the alleged underlying constitutional violation cannot be conclusory; it must contain specific facts. *Spiller,* 130 F.3d at 167.

In order to plead a practice, a plaintiff must do more than describe the incident that gave rise to his injury. *Pena,* 879 F.3d at 622. Here, Plaintiff has not pled the existence of a persistent and widespread prior practice that is similar to the alleged violations described in the Second Amended Complaint. Plaintiff has not pled that there was a policy, custom, or practice as to have the force of law.

Regarding Plaintiff's claims for failure to train or inadequate hiring practices, Plaintiff is required to plead a "pattern of similar constitutional violations by untrained employees" in order to demonstrate a showing of deliberate indifference within that particular framework. *Id.* at 623, citing *Connick* 563 U.S. at 62, 131 S.Ct. 1350. In other words, Plaintiff is required to prove something more than a conclusory and generic allegation regarding Sheriff Moses' hiring practices. Plaintiff's Second Amended Complaint is fatally deficient.

Plaintiff urges the Court to allow another amendment to cure any deficiencies. The Court notes that this case is over five years old, and Plaintiff has already amended her complaint twice.[14] However, Plaintiff has provided no good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure which would warrant another amendment.

## CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion for Judgment on the Pleading and dismiss with prejudice Sheriff Ricky Moses in both his individual and official capacity.

**THUS DONE AND SIGNED** in Chambers on this 4th day of February, 2022.

JAMES D. CAIN, JR.
UNITED STATE DISTRICT JUDGE

---

[14] See Docs. 1, 11 and 49.